T.C. Memo. 2015-138

UNITED STATES TAX COURT

HENRY J. HAFF AND DIANE M. LIS HAFF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6500-13.                                    Filed August 3, 2015.

<u>William H. O'Toole</u>, for petitioners.

<u>Alexander R. Roche</u>, for respondent.

MEMORANDUM OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated March 12, 2013, respondent

determined a deficiency in petitioners' 2009 Federal income tax of $263,015.

The issue for decision is whether petitioners are entitled to an additional

$730,786 in deductions related to a loss from a Ponzi scheme for the taxable year

**[\*2]** 2009.  The disallowance of their deductions gives rise to the deficiency in this case.

Background

This case was submitted fully stipulated under Rule 122.[1]  The stipulated facts are incorporated in our findings by this reference.  Petitioners resided in the State of Illinois at the time they filed their petition.

In 2005 Mr. Haff began to invest in GSH Development, LLC (GSH), through his single-member LLC, HJH Hinsdale.  GSH was a joint venture between Mr. Haff and Grant Street Investors, LLC (Grant Street), formed to develop condominiums and townhomes in Hinsdale, Illinois.  WexTrust Capital, LLC (WexTrust), directly or indirectly owned Grant Street.  Neither party disputes, and the regulations prescribe, that GSH should be treated as a partnership for Federal tax purposes, although GSH never filed a Form 1065, U.S. Return of Partnership Income, or provided petitioners with a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc.  See sec. 301.7701-3, Proced. & Admin. Regs.  In 2005

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1986, as amended, in effect for the year in issue.

[*3] Mr. Haff made a $1 million initial investment in GSH. Between 2005 and 2010 Mr. Haff contributed an additional $337,690 to GSH to cover expenses.[2]

On August 11, 2008, the Securities and Exchange Commission filed a complaint in the U.S. District Court for the Southern District of New York against the owners of WexTrust alleging that WexTrust was a Ponzi scheme. A court-appointed receiver determined that continued development of the GSH project was not economically viable. As a result petitioners concluded that their entire investment in GSH was lost. Petitioners claimed a bad debt expense deduction of $2,068,476 for the 2009 tax year on account of that lost investment. The bad debt expense deduction included the $1,337,690 that Mr. Haff contributed to GSH and the $730,786 that petitioners allege GSH owed him as fees for his services in development, sales, marketing, and construction. The $730,786 was never included in petitioners' income for tax purposes.

In the notice of deficiency respondent denied petitioners' bad debt expense deduction for the $1,337,690 Mr. Haff contributed to GSH and the $730,786 that GSH owed him. Respondent allowed, however, a theft loss deduction for the

---

[2] All monetary amounts are rounded to the nearest dollar. Mr. Haff's additional contributions included $312,500 for a lawsuit settlement on May 14, 2007, $13,848 for attorney's fees for closing the project on August 22, 2008, and $11,342 for miscellaneous expenses spanning the years 2005-10.

[*4] amount Mr. Haff contributed but limited petitioners' theft loss deduction to $1,317,004.  Respondent now acknowledges that petitioners' theft losses are exempt from itemized deduction limitations, see secs. 67(b)(3), 68(c)(3), and therefore concedes that petitioners are entitled to a theft loss deduction for the full amount of Mr. Haff's $1,337,690 contribution to GSH.  Petitioners assert that the additional $730,786 is deductible as a theft loss according to the safe harbor provision set forth in Rev. Proc. 2009-20, 2009-14 I.R.B. 749.

Discussion

Section 165 prescribes rules for the deductibility of theft losses, including timing and amount.  The parties do not dispute that petitioners suffered a theft loss; the issue to be decided is the amount of loss that may be deducted.  Petitioners claim that the deductible loss includes amounts owed but never paid and never taxed; respondent disagrees.

Ordinarily, the burden of proof in cases before the Court is on the taxpayer.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  As presented by the parties, the determinative question in this case is legal and not factual.  Therefore, the burden of proof does not affect our analysis.  See Black v. Commissioner, T.C. Memo. 2014-27.

[*5]  The amount of a theft loss that is deductible generally is limited to the adjusted basis of the property taken.  See sec. 1.165-1(c), Income Tax Regs.; see also secs. 1.165-7(b)(1), 1.165-8(c), Income Tax Regs.  The property at issue is petitioners' investment in GSH.  Under section 705 a partner's basis generally is composed of contributions to the partnership, see sec. 722, plus his or her distributive share of partnership income, see sec. 703(a), less distributions and his or her distributive share of partnership losses or expenditures, see sec. 733; sec. 1.705-1(a)(2), Income Tax Regs.  Basis does not include the value of services performed unless and until the value of those services has been subjected to tax. See Hutcheson v. Commissioner, 17 T.C. 14, 19 (1951) (explaining that a deduction for the taxpayer's loss of time or the value of that lost time is disallowed because the taxpayer has not included any amount attributable to the lost time in gross income and therefore has no tax cost basis in the lost time that he can deduct); see also Tonn v. Commissioner, T.C. Memo. 2001-123 (holding that the value of taxpayer labor does not increase basis and that a taxpayer is not entitled to a deduction for the imputed value of services that he has not been required to report as income), aff'd, 40 Fed. Appx. 337 (8th Cir. 2002).  Therefore, petitioners' basis in GSH equals the initial investment of $1 million plus subsequent contributions to GSH of $337,690.

**[\*6]**  Petitioners do not argue that the additional $730,786 should be deductible under the plain text of section 165.  Rather, petitioners assert that Rev. Proc. 2009-20, supra, allows a loss deduction for amounts not previously included in income under a safe harbor and that the safe harbor applies to the amounts that GSH owed them.  Even if the revenue procedure applies, it would not permit petitioners to deduct the additional $730,786 on their 2009 tax return.  The safe harbor provision of Rev. Proc. 2009-20, supra, permits deductions only to the extent of a "qualified investment".  A qualified investment is defined as the taxpayer's total amount of cash, or the basis of property, invested plus "[t]he total amount of net income with respect to the specified fraudulent arrangement that, consistent with information received from the specified fraudulent arrangement, the qualified investor included in income for federal tax purposes for all taxable years prior to the discovery year, including taxable years for which a refund is barred by the statute of limitations", minus the total cash or property that the taxpayer withdrew in all years.  Rev. Proc. 2009-20, sec. 4.06(1)(a) and (b), 2009-14 I.R.B. at 750 (emphasis added).

Petitioners did not include the $730,786, or any portion thereof, as income for prior years.  To constitute basis, for purposes of section 165 or Rev. Proc. 2009-20, supra, the amounts owed must have been included in income for tax

**[\*7]** purposes previously. Accordingly, petitioners are entitled to a theft loss deduction for the adjusted basis in GSH of $1,337,690, but they are denied a deduction for the additional $730,786 they claimed was owed them but was never paid. Because we hold that none of the additional amount may be deducted, we need not reach the issue of substantiation of the additional amount that respondent raised.

To reflect the foregoing,

Decision will be entered under

Rule 155.